HIMMELBERGER-LUCE LAND & LUMBER COMPANY, Appellant, v. J. T. BLACKMAN and NEW MADRID COUNTY.

Division Two, March 19, 1907.

1. **SPECIFIC PERFORMANCE: Suit to Set Aside County Patent.** A suit to set aside a patent issued by the county to defendant, on the ground that the county had previously contracted the land to plaintiff and defendant had taken the land with notice of such contract, is in reality a suit for a specific performance of that contract.

2. ———: ———: **Swamp Lands: Contract for Drainage Ditch: Notice.** By contract with the county plaintiff's assignor agreed in 1885 to construct a large drainage ditch and was to be paid therefor in swamp lands, at the rate of $1.25 per acre, in certain townships, in which was included the eighty acres in suit. The work was to be completed in 1894, and the contractor dying the contract was renewed to his heirs in 1893 upon condition that "any person in actual possession of any of the lands, who has made improvements and is now residing thereon, shall have the right to purchase" eighty acres of the same at $1.25 per acre at the time patents are issued to the contractor for

lands in payment for the improvement, and this renewal contract was assigned to plaintiff. In 1887 one Shelfer settled on the eighty in controversy, fenced and put in cultivation fifteen or eighteen acres thereof, erected a house thereon, and lived there till 1898, when he sold and conveyed it to defendant, who in 1899 applied for a patent thereon, and over the protest of plaintiff and after a hearing by the county court a patent was issued to him. *Held*, that plaintiff's assignor had no right to a patent in 1893 when the contract was renewed, nor did plaintiff have such right in 1899 when the patent was issued to defendant, nor is plaintiff in a position to complain that the county agreed to the substitution of defendant to the right of Shelfer, since the county stood ready to turn over to plaintiff the $1.25 per acre paid by defendant. *Held*, also, that, since the contract did not specify the particular acres which were to be conveyed in satisfaction of the work, and since the townships named contained if full more than 400,000 acres, and only 213,691 acres have been earned by the contractor, for that reason, plaintiff is not entitled to specific performance as to this particular eighty acres.

3. ————: **Discretion of Chancellor.** The discretion of the chancellor as to whether or not he will grant a specific performance, is not an arbitrary or capricious one, but is a sound judicial discretion controlled by established principles of equity applicable to the facts of the case.

Appeal from New Madrid Circuit Court.—*Hon. Henry C. Riley*, Judge.

AFFIRMED.

*Oliver & Oliver* for appellant.

(1) The county court had no power to determine the rights of settlers under the contract of May 20, 1893, or to issue patents thereunder to any one other than the Luce heirs, their executors, administrators or assigns. The contracts with Charles L. Luce and his heirs expressly provided that upon completion of the work the county would convey to him or them, or their assigns, all of the county's rights, whether then owned or thereafter acquired, in and to the lands covered by the contracts, whether such interest was vested or

contingent, or whether said county was possessed of the legal title to the same or not. Clause 11 of the contract of May 20, 1893, was a contract made for the benefit of third persons, and is limited to the persons and upon the conditions therein specified. The clear meaning and intention of this provision was that the lands were to be patented, as provided by the contract to the Luce heirs, and that persons who were then actual settlers, residing on the lands, should have the right to protect the improvements which they had then made, by purchasing from the Luce heirs, at the price stated. It is equally clear that it is not intended that such settlers' rights should be assignable, or that persons other than actual settlers should have the benefit thereof, or that lands thus settled should be excepted from the patents, or that the county court should be empowered to determine who were entitled to rights under the contracts. If any settler came within the provision of the contract, he was entitled to enforce his right in any court having jurisdiction, upon tender of his purchase price, in an action against the Luce heirs or their assigns. (2) There is no general jurisdiction in the county court to determine questions of title between conflicting claimants to lands. Much less is there equitable jurisdiction in the court to undertake to decree specific performance of a contract, which was in effect what was done. Sec. 1771, R. S. 1899; Coil v. Pitman's Admr., 46 Mo. 51; State ex rel. v. Madison County Court, 136 Mo. 323, where it is said, "The county court is of statutory origin, having neither common law nor equitable jurisdiction;" Valle v. Fleming, 19 Mo. 459. The county court recognized the ownership of the lands in question to be in the Luce heirs or their assigns, the Himmelberger-Luce Land & Lumber Company, for it provided by its decree that the proceeds of the lands which they attempted to convey should be paid to the clerk of the county court, to be held by him for the Luce heirs, or the Himmelber-

ger-Luce Land & Lumber Company. Surely that court is possessed of no jurisdiction to compel the owner of lands to exchange it at a given price for money, or to determine upon a contest who is entitled to the benefit of the contract. Although a court of record, the jurisdiction of the county courts in Missouri is limited to the power conferred by the Constitution and statutes. They possess no common law jurisdiction, and no constitutional or statutory jurisdiction in suits of an equitable nature between third persons to determine title to real property. Sec. 1771, R. S. 1899; State ex rel. v. Madison County Court, 136 Mo. 323; Valle v. Fleming, 19 Mo. 459. The subject-matter of the controversy with respect to the right to these lands was one which was not within the jurisdiction of the county court, either as between third parties claiming them adversely to one another, or claiming them adversely to the county. State ex rel. v. Elkin, 130 Mo. 90; Coil v. Pitman's Admr., 46 Mo. 51; State ex rel. v. Madison County Court, 136 Mo. 323; Bauer v. Franklin Co., 51 Mo. 205; Sturgeon v. Hampton, 88 Mo. 203. (3) Clause eleven of the drainage contract conferred the rights of purchase to persons: (a) In actual possession of the lands at the time of making the contract (May 20, 1893), and (b) Who then had improvements thereon, and (c) Who were then residing thereon. Blackman was neither of these. Blackman never had actual personal possession of the lands. He did not have improvements thereon at the time of making the contract and he never resided thereon. He had no interest whatever in the lands, or the improvements until he attempted to purchase the same from one Shelfer, in 1898, three years after the contract was made. And after that time he never resided thereon or had constructive possession through a tenant. The lands upon which such improvements had been made were, of course, the very best lands in the entire body to be conveyed. Consequently, speculators eagerly sought

to secure the best lands at the smallest price. The county courts, in the disposing of swamp lands, are but the agents of the county, with powers limited and defined by law, and their acts, when they exceed these powers, are void. Railroad v. Hatton, 102 Mo. 145. (4) Blackman was not one of the "persons" provided for in clause 11 of the contract of May 20, 1893, and was not, and is not, entitled to this land; and in no event could New Madrid county make him a valid patent to this land, under its contract with Luce. Crawford v. Elliott, 78 Mo. 498; Black River Lumber Co. v. Warren, 93 Mo. 375; Goode v. St. Louis, 113 Mo. 257; Lovelace v. Travelers' Protective Association, 126 Mo. 104.

*H. C. O'Bryan* for respondents.

The county court was clearly authorized to dispose of these lands. The evidence shows that the interest which appellant had was the $100 and was to receive $1.25 per acre; that Blackman's interest, measured by the value of his improvements, as sworn to by appellant's witness, was $400. If appellant had been granted a patent, Blackman would have been remediless to recoup his loss, but by granting patent to Blackman appellant was protected in its contractual right, for the settlers' lands were exempt, and in lieu thereof appellant contracted that the settler pay $1.25 per acre, which was done; so that appellant is not in anywise injured, nor is its contractual rights abridged or diminished in any respect. The county court had the sole right to dispose of these lands and to pass upon the rights of settlers. Laws 1868, p. 71, secs. 14, 15, 16 and 17, which were amended in 1879; R. S. 1879, secs. 6162, 6163, 6164, 6165. This law was in force on December 1, 1885, when C. L. Luce made the first contract with the county. This law recognized that the settler had property rights to any quality of lands, including

their improvements, not exceeding eighty acres. Laws 1879, sec. 8162. Nor were these rights limited to the cultivated or enclosed fields. R. S. 1879, sec. 6162. And the county courts were charged and empowered to make such rules in relation to settlers as would protect their rights. R. S. 1879, sec. 6165. These laws of 1879 relating to settlers' rights were re-enacted in the Revised Statutes of 1889 without change. R. S. 1889, p. 1521, secs. 6472-3-4-5. And again re-enacted in 1899 without change. R. S. 1899, p. 1925, secs. 8206-7-8-9. So it has been the settled policy and the settled law since 1868 to recognize the rights of settlers, and county courts have been invested with the power to make rules for the protection of such claimants. It is a property right, and with the right goes the protection that the law throws around it. These statutes were in force when the contract under which the appellant claims was entered into between the heirs of C. L. Luce and the county of New Madrid, on the 20th of May, 1893, and clause 11 of said contract cannot and should not be construed as a limitation of said statutory property right, but must be construed in harmony with the statute referred to except in so far as where the Luces waive the necessity of the settlers' possession antedating the contract, for they had the power to make such waiver for themselves and the county court to require it in protecting the rights of settlers. On the same principle the county court could protect one who bought another's improvements, as Blackman had in this case. It must be borne constantly in mind that the contract with the Luce heirs in 1893 is a renewal of the old contract of 1885 made with C. L. Luce, and they must be read together.

GANTT, J.—This is a bill in equity brought by the plaintiff against New Madrid county and J. T. Blackman, to set aside a patent issued by New Madrid county to the defendant Blackman.

The land in suit is a portion of the land originally granted to the State of Missouri by the act of Congress of September 28, 1850,·and is a part of the swamp lands granted to New Madrid county by the State of Missouri by various acts of the Legislature from 1855 up to and including 1869.   The plaintiff's right to the said land is deduced  through a contract made between the county of New Madrid and one Charles L. Luce on the first day of December, 1885, whereby Luce agreed to dig a certain ditch or canal in said county from the Iron Mountain railroad in a southern direction and along Little river a distance of twenty-three miles, and about forty feet wide and ten feet deep, for the purpose of draining and reclaiming the swamp and over-flowed lands of said county.   By said contract the work of digging said ditch was to be paid for by the county of New Madrid at the rate of fourteen cents per cubic yard, in swamp and overflowed lands at the price of one dollar and twenty-five cents per acre.   It appears from the petition that the original contractor, C. L. Luce, began the digging of said ditch, but died on the 15th of September, 1886, without having made any great progress towards its completion.   By the terms of the contract, the work was required to be completed on or before the first day of January, 1894.   On the 20th of May, 1893, the widow and heirs at law of Charles Luce, recognizing that they could not complete it by the first of January, 1894, applied to the county court of said county for an extension of said contract, and on said date the said contract, upon consideration and terms therein agreed upon, was extended until the first day of January, 1899.

By the eleventh article of said contract, it was provided:  "It is further agreed that any persons who are now in actual personal possession of any of the lands, the legal title of which is now in New Madrid county, and who have made improvements and are now residing thereon, shall have the right to purchase said

lands at the time the same are patented or conveyed to the parties of the first part, their heirs, executors, administrators or assigns, at and for the price of $1.25 per acre, but this provision shall only apply to improvements made at this time and shall in no event entitle any such person to more than eighty acres.''

It was further provided in the original contract with Luce, and the said provision was continued in the new contract with his heirs, that the purpose of the said contract was, ''to provide for the sale and conveyance to said Charles Luce, his heirs and assigns in payment for the work to be done by him or them, of the entire interest which said county then had or might thereafter acquire in said lands, or so much thereof as might be necessary to pay for said work at the prices thereinafter specified.'' This contract of 1893 was not completed within the time specified, but by an additional contract was further extended.

Afterwards, on the 30th of November, 1895, the heirs of Charles Luce sold, assigned and set over all their right, title and interest in and to the said contracts, to the Himmelberger-Luce Land & Lumber Company, the plaintiff in this case. Thereafter, in 1899, the court appointed three commissioners to inspect the work on the said drain and ditch, and to make a report to the court, and at the May term, 1899, the said commissioners reported that the work had been constructed and completed in compliance with the contracts, and the court approved the commissioners' report. And thereupon at the said May term, the plaintiff herein filed its petition in the county court, in which it alleged that according to the report of the engineer in charge of the work, it was entitled under the said contract to $267,-114.18 in payment for the work so done, which sum was payable in swamp lands at one dollar and twenty-five cents per acre, less any conveyance theretofore made to it under said contract, and prayed that the work be accepted by the court and that the amount of credit to

which it was entitled should be ascertained and determined, and that "all right, title and interest, legal or equitable, which New Madrid county had December 1, 1885, or had since acquired in and to the swamp and overflowed lands situated in the townships and ranges in said contracts specified, except so far as actual settlers thereon were entitled to enter the same by the terms of said contracts, upon the payment to it of one dollar and twenty-five cents per acre therefor," be conveyed to it in payment for said work. Thereupon the court found that the work had been completed and approved and accepted the same and found that the work so done amounted under the contract price at the rate and upon the basis of fourteen cents per cubic yard to $267,114.18, which amount was payable to the plaintiff or its assigns in swamp or overflowed lands at and for the price of one dollar and twenty-five cents per acre, in the manner provided in said contract. And it was ordered that patents or deeds be issued for such lands as the parties might be entitled to under said contract. At the said May term, it was ordered by the court that a patent or deed be prepared to embrace all the lands mentioned in the said contracts except such as are claimed by settlers under section 11 of the contract of May 20, 1893, and the said deed be made to John H. Himmelberger as prayed for by the plaintiff.

On the 27th of June, 1899, it appears that the defendant J. T. Blackman applied to the court for a patent to the eighty acres in suit in this case, upon the payment by him of one hundred dollars therefor. The proceeding in said court is entitled, "James T. Blackman v. The heirs of C. L. Luce et al., defendants," and the court found that the defendant was entitled to purchase the east half of the southwest quarter of section 29, township 23, range 12 east, containing eighty acres, at and for the price of one dollar and twenty-five cents per acre, and it was ordered that a patent be issued to him for said land to be signed by the presiding judge of

the county court, and attested by the clerk, upon the payment to the county clerk of one hundred dollars, said sum to be held subject to the order of the legal representatives of Elmira C. Luce and others, according to the terms of the said contract of May 20, 1893, and said sum having been paid as ordered, a patent in due and legal form was issued to the defendant, and was recorded on the 30th of June, 1899.

It was admitted that the clerk of the court was appointed by the county court to receive money from claimants of land. It was admitted that the defendant in May or June, 1899, applied for a patent to the land in dispute under section eleven of the contract of 1893, and that the plaintiff at the time protested against issuing it to him, and that he had notice when the patent was obtained by him that plaintiff claimed the land under its contract with the county, and the county court heard proof pro and con upon the question of issuing this patent to defendant, and that plaintiff protested against the hearing of said testimony. The testimony tended to show that one T. E. Shelfer settled upon this eighty acres in controversy, some time in 1887, and lived on it until some time in 1898; that he had erected a house thereon and cleared out about fifteen or eighteen acres, which he put in cultivation, and had fenced a portion of it, and had occupied portions of both forties of said eighty-acre tract, and that some time in 1898, Shelfer by deed conveyed, sold and delivered said premises to this defendant, who has since been in possession thereof, cultivating and using the same by and through a tenant of his. It also appears in evidence that Shelfer applied for and received a patent to another forty-acre tract of said land. It further appeared that the defendant was a physician and lived about one mile from the land in question, at Wylie crossing. After hearing all the evidence, the court found the issues for the defendant and dismissed the plaintiff's bill, and

202 Sup—20

from that decree the plaintiff has appealed to this court.

I.   The bill in this case is in reality one for specific performance.   While it seeks to set aside the patent to the defendant, it proceeds on the theory that the plaintiff was entitled to a deed from New Madrid county to it for this specific eighty acres, and that defendant took the same with full knowledge of plaintiff's right to such a conveyance under and by virtue of the contract of 1885 with Luce and the extension of that contract in 1893 with his heirs.   It is perfectly obvious that if plaintiff has any equity, it must be worked out through those two contracts.   Upon a careful consideration of the article eleven in the contract of 1893, with the heirs of Luce, we have reached the conclusion that by that article New Madrid county reserved from any future obligation to convey said heirs any portion of its swamp lands, all such portion thereof as were at the date of the execution of the contract of 1893 in the actual possession of a settler who had improvements thereon.   At that time it was unknown whether plaintiff's grantors, the heirs of Luce, would comply with their contract and complete the said drain so as to entitle them to any portion of the swamp lands belonging to said county, but if they did, it was equally unknown how much excavation would be required and how many acres of swamp lands would be required to fulfill the county's contract at the rate of one dollar and twenty-five cents per acre.   For many years prior to the making of the said contract the laws of this State gave a pre-emption right to actual settlers on swamp lands, which had been given to the various counties by the State, and it seems obvious that the county court was mindful of this general statutory provision, which gave a pre-emption right to those who were settlers in 1879, and the inherent equities of the case suggested to the court that a like protection should be offered to those actual settlers who did not come within the express

provisions of section 6162, Revised Statutes 1879, and section 6472, Revised Statutes 1889, hence the court reserved by expressed stipulation from the contract of 1892, a right of pre-emption to those persons who were then in actual possession of any of said swamp lands and who had made improvements thereon, and by mutual agreement the court and the heirs of Luce provided that, in case the contract with Luce should require a number of acres in excess of those excepted from the contract, the county would pay over to Luce the one dollar and twenty-five cents per acre for such pre-empted lands, and the heirs of Luce would receive the same in lieu of a deed or patent to such lands. That Shelfer was an actual occupant of the eighty acres in controversy in this suit at the date of the said contract of 1893, and had previously made valuable improvements thereon and put some fifteen or eighteen acres thereof in cultivation and fenced the same, there can be no sort of question. The heirs of Luce then never had a right to a patent to this specific eighty acres of land, but by their contract might have become entitled to the purchase money which Shelfer or his assignee should pay to the county therefor. In our opinion, the plaintiff as the assignee of the contract rights of the heirs of Luce was from the date of that contract in no position to demand a conveyance of this eighty acres, nor does it lie in its mouth to complain that the county court agreed to the substitution of the defendant Blackman to the right of Shelfer, so long as the county stood ready to compensate them by turning over to them the purchase money for said eighty acres. As it is conceded that the money was tendered to plaintiff and is lying in the treasury of the county for plaintiff, it has suffered no injury by the conveyance of the land to the defendant Blackman. While it is sometimes said that it is discretionary with the chancellor in each case whether he will grant a specific performance, it is settled doctrine that this discretion is

not an arbitrary and capricious one, but is a sound judicial discretion controlled by established principles of equity as applicable to the facts of the case. Looking at this contract and all of its terms and the attitude of the several parties affected thereby, we are of the opinion that it would be unjust and inequitable to deprive the defendant of the legal title which was vested in him by the patent from New Madrid county, and to vest in the plaintiff a title to improvements which it had never earned and for which it has paid nothing. For aught that appears in the allegations of the bill, and in the findings of the county court, there may be thousands of acres of swamp lands belonging to the county which were not required to carry out the contracts of the county for the conveyance of swamp lands in payment for the ditch. Nowhere in the petition or in the proofs is there any finding of how many acres is contained in the eighteen townships out of which the county was to get the requisite number of acres to fulfill its contract with the heirs of Luce, or the plaintiff as their assignee. If the townships are full they must contain over four hundred thousand acres of land, whereas according to contract and the report of the chief engineer in charge of the work, the heirs of Luce had only earned 213,691 acres. As already said, the contract by the county with the plaintiff nowhere specifies the particular acres which were to be conveyed in satisfaction of the work in making the ditch, but only that the county court out of the general description of its swamp lands would convey swamp lands enough to make up the price of constructing the said drain at one dollar and twenty-five cents per acre, and at the rate of fourteen cents per cubic yard, and for this additional reason, we are of the opinion that the plaintiff was not entitled to the specific performance for which it prays, and that the judgment of the circuit court was clearly for the right party, and accordingly it is affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.